[No. B175388. Second Dist., Div. Eight. Dec. 27, 2005.]

BUSINESS TO BUSINESS MARKETS, INC., Plaintiff and Appellant, v. ZURICH SPECIALTIES LONDON LIMITED et al., Defendants and Respondents.

**COUNSEL**

Esner & Chang, Stuart B. Esner and Andrew N. Chang for Plaintiff and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker, Martin K. Deniston, Robert Cooper and Daniel H. Lee for Defendants and Respondents.

**OPINION**

**RUBIN, J.—**

## FACTS AND PROCEDURAL BACKGROUND[1]

In July 2000, appellant Business to Business Markets, Inc., also known as "B2B," hired Tricon Infotech, an Indian software company, to write a custom-made computer program for B2B's business. One term of their contract obligated Tricon to carry an errors and omissions insurance policy to compensate B2B if Tricon failed to deliver the promised software.

B2B thereafter contacted Hoyla, a retail insurance broker. B2B informed Hoyla of Tricon's insurance needs, and told Hoyla that Tricon was based in India. Hoyla contacted respondent Professional Liability Insurance Services, Inc. (PLIS), a surplus lines insurance broker, to place the insurance policy and gave PLIS the information it had received from B2B. PLIS contacted Zurich Specialties London Limited, which issued a policy to Tricon. Although Tricon was an Indian company doing business in India, the policy excluded coverage for any claims arising from or related to work performed in India.

---

[1] As we are reviewing a judgment of dismissal after the trial court sustained respondent's demurrer without leave to amend, we assume the truth of the allegations in appellant's complaint without passing on their veracity. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Tricon failed to deliver usable software to B2B, so B2B sued Tricon for breach of contract. Based on the insurance policy's exclusion for work done in India, Zurich Specialties refused to pay for Tricon's defense or to indemnify Tricon against B2B's claim. Tricon did not appear in court to contest B2B's complaint. After a prove-up hearing on damages, the trial court entered a default judgment against Tricon of $922,480. But without any insurance coverage, the judgment against Tricon was uncollectible. B2B thus sued PLIS for negligence in procuring a policy that did not cover work done in India. Pointing to the absence of any direct dealings or contact with B2B, PLIS demurred on the ground that it owed no duty of care to B2B. The trial court agreed and sustained PLIS's demurrer without leave to amend. We reverse.

## DISCUSSION

The issue is whether PLIS owes a duty of care to B2B even though the two parties had no direct contact, were not in privity of contract, and B2B was not named on the policy. To decide whether this demurrer should be sustained or reversed, we assume the truth of all facts that were properly pleaded by B2B, and independently review whether those facts state a cause of action. When, as here, the trial court sustained a demurrer without leave to amend, we further consider whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)

In *Biakanja v. Irving* (1958) 49 Cal.2d 647 [320 P.2d 16] (*Biakanja*), the California Supreme Court considered whether a defendant had a duty to exercise due care to protect the plaintiff although they were not in privity of contract. The facts involved a notary public who wrote a will that lacked sufficient attestation. The plaintiff, who was a beneficiary of the will, therefore did not receive the estate she would have received if the will had been prepared properly. The court considered several factors as to whether a duty of care existed: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Id.* at p. 650.) After weighing these factors, the Supreme Court held that the

plaintiff could recover from the notary public despite the absence of privity of contract.

■ PLIS argues that the factors identified in *Biakanja* preclude PLIS's liability to third parties for professional negligence. We disagree, and conclude that the complaint's allegations support finding a duty of care.[2] The first factor is the extent to which the transaction was intended to affect B2B. PLIS contends that the insurance transaction was primarily intended to affect Tricon. We disagree because even though Tricon was the named insured, Tricon bought the policy, as required under its contract with B2B, for the purpose of protecting B2B against Tricon's possible breach of contract. Therefore, the insurance transaction greatly affected B2B.

The second factor from *Biakanja* is foreseeability of harm to B2B. PLIS argues that the harm was not foreseeable because no one intended for Tricon to breach the software contract; indeed, according to PLIS, if Tricon's breach of contract had been foreseeable, B2B presumably would not have awarded Tricon the contract. We find B2B's response more convincing: Insurance exists to protect against unlikely, but nevertheless possible, and thus foreseeable, events. Insurance companies take a gamble when giving insurance, and there was always the possibility here that Tricon would default on its contractual obligations. B2B's injury from Tricon's breach was therefore foreseeable.

The third factor is the degree of certainty that B2B suffered injury. PLIS says that the certainty of harm to B2B is minimal, especially since Tricon did not contest B2B's complaint, electing to have its default entered instead. As this is an appeal from a demurrer, we accept B2B's allegation that it was injured in an amount at least equal to the default judgment of $922,480. Moreover, to the extent PLIS is arguing the damage award has little or no veracity because it was taken by default, PLIS ignores that the trial court held a prove-up hearing. Such a hearing lends some measure of substance to B2B's claimed damages, and undermines PLIS's seeming intimation that B2B's allegation of damages is made from whole cloth.

Two more factors are the moral blame attached to PLIS's conduct and the policy of preventing future harm. PLIS argues B2B engaged in the most blameworthy conduct of any party by deciding to do business with a "foreign company" such as Tricon. We reject the aspersion. PLIS voluntarily assumed

---

[2] Of course, liability rests on more than just a duty of care. Among other things, the defendant must also breach that duty, causing damage to the plaintiff. This appeal concerns only the duty of care, however, and therefore we confine our analysis to that element of professional negligence.

the responsibility of finding insurance for Tricon. It was obligated to discharge that responsibility competently. Despite Tricon's insurance broker, Hoyla, having told PLIS about Tricon's insurance needs under its contract with B2B, PLIS failed to meet that responsibility when it obtained a policy that excluded any work done in India by Tricon. Moreover, imposing liability on PLIS has the salutary effect of encouraging PLIS and other insurance brokers to secure insurance policies for their clients that meet their clients' needs.

The final, and in this appeal perhaps most problematic, factor is the closeness of the connection between PLIS's conduct and B2B's injuries. PLIS contends that among all the parties involved, the connection between PLIS and B2B was the most tenuous. PLIS dealt directly only with Tricon's broker, Hoyla, and Tricon's insurer, Zurich. PLIS had no dealings with B2B, and indeed B2B was not even named on the insurance policy PLIS procured. In a sense, B2B was simply a third party beneficiary of the insurance in the event Tricon breached their contract. The issue on which this factor turns is whether B2B was an *intended* third party beneficiary—to which PLIS owed a duty of care—or merely an *incidental* third party beneficiary, to which PLIS owed no such duty.

■ *Jones v. Aetna Casualty & Surety Co.* (1994) 26 Cal.App.4th 1717 [33 Cal.Rptr.2d 291] (*Jones*), explains that whether a third party is an intended beneficiary or merely an incidental beneficiary "involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." (*Id.* at p. 1725.) In *Jones*, the landlord was obligated to maintain rental income insurance at the tenant's expense. When the property was damaged and the tenant could not pay rent, the landlord notified the insurance company, but the insurance company failed to pay. The tenant then sued the insurance company for breach of the covenant of good faith and fair dealing, and claimed that he was being sued by the landlord because the insurance company breached its obligations. (*Id.* at p. 1721.) The court held the tenant could not enforce the contract that was intended to benefit only the landlord because the tenant was never an intended beneficiary of the contract. (*Id.* at p. 1725.) The court clarified that even though the tenant "would have received some benefit in the event [the insurance company] indemnified the [landlord] for loss of rental income only makes him an incidental beneficiary under the policy." (*Ibid.*) B2B, unlike the tenant in *Jones*, is the party who directly benefits if the insurance policy is paid, and therefore is not merely an incidental beneficiary.

■ An intended beneficiary of insurance, in contrast, is one who intentionally receives the benefit of the insurance. However, this person does not need to be specifically named, as long as he is in the class of members that the insurance is intended to benefit. *Harper v. Wausau Ins. Co.* (1997) 56 Cal.App.4th 1079 [66 Cal.Rptr.2d 64] (*Harper*), illustrates this point. In *Harper*, there was a provision in the policy specifically for third parties injured on the insured's property. (*Id.* at p. 1090.) *Harper* distinguished itself from *Jones*: "In this case, unlike in *Jones*, the policy provision expressly confers a benefit directly on third parties who are injured on the owner's property. As an intended third party beneficiary, plaintiff had a right to enforce the contract." (*Id.* at p. 1091.)

Although B2B is, strictly speaking, not quite an intended beneficiary, it comes close enough to being one that imposing duty on PLIS is within the spirit of *Biakanja*. Just because other parties, such as retail insurance broker Hoyla, may have closer connections to B2B does not mean PLIS's connection was legally inadequate.[3] B2B is more than an incidental beneficiary—it made the initial phone call and contact with Hoyla (who then contacted PLIS) because it considered itself the intended beneficiary of the policy. Moreover, and most importantly, the software contract between B2B and Tricon called for such a policy, a contractual obligation that, upon demurrer, we infer retail broker Hoyla told PLIS about when Hoyla gave PLIS the information Hoyla had received from B2B about Tricon's being an Indian company.

■ Imposing a duty of care to third parties who are not clients does not involve a reworking of any accepted legal principles, particularly when, as here, PLIS was a professional entity rendering specialized services. For example, in *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370 [11 Cal.Rptr.2d 51, 834 P.2d 745], the California Supreme Court held accountants could be liable to others beyond the audit client for misstatements in an audit report.

---

[3] PLIS cites out-of-state authorities interpreting non-California law for the proposition that a surplus lines insurance broker never owes a duty to third parties who do business with an insured. Such authorities are inapposite because they do not involve the duty of care under California law set forth in *Biakanja*. PLIS also cites *Rios v. Scottsdale Ins. Co.* (2004) 119 Cal.App.4th 1020, 1029 [15 Cal.Rptr.3d 18], for the proposition that a surplus lines broker cannot be liable for negligent or fraudulent misrepresentations to an insured if all communications between the broker and the insured went through the insured's retail broker. *Rios* is inapt because it deals with liability for communications, not liability for failing to obtain a policy with the expected type of coverage. Finally, PLIS relies on *Adelman v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 352 [108 Cal.Rptr.2d 788], which it describes as dispositive. PLIS cites *Adelman* for the proposition that a retail broker who is not liable to its insured for providing a deficient policy cannot be liable to nonparties to the insurance contract. PLIS's reliance on *Adelman* presupposes PLIS is not liable to Tricon, a question not before us and which we have not decided.

(*Bily*, at pp. 406–407.) And in *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35 [269 Cal.Rptr. 228], the Court of Appeal found a real estate broker owed a duty of care to third persons in the transaction despite the absence of privity between the broker and third person. (*Id.* at p. 42.) Echoing *Biakanja*, the Court of Appeal explained, " 'The question is the extent of that duty that will be imposed on the broker.' [Citation.] This question is answered by weighing a number of factors, including the extent the transaction was intended to affect the third party, the foreseeability of harm, the degree of certainty the third party suffered injury, the moral blame attached to the broker's conduct, and the policy of preventing future harm." (*Ibid.*)

■ " 'The existence of duty is a question of law. [Citation.] "[L]egal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." ' " (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 885 [2 Cal.Rptr.2d 79, 820 P.2d 181].) When the third person's injuries arise from the defendant's rendering of professional services, several additional factors beyond the *Biakanja* factors come to mind in our deciding whether to find a duty. One factor is the degree to which clients and third parties ordinarily relinquish control for decisionmaking to the professional. Another is the degree to which the defendant works under professional standards established and maintained by the profession. A third factor is the defendant's ability to spread its costs by raising its fees or buying liability insurance. And a fourth factor is the expected and customary reliance by clients and others on the skillfulness and expertise of the defendant's profession. In this case, all those factors weigh in support of finding a duty. Surplus lines insurance is a specialized, niche-market service. As such, clients and others rely on the broker to get the right type of policy. In addition, insurance is a highly regulated industry with a number of associations and bodies dedicated to promoting the industry's well-being and professionalism. Finally, insurance exists within a broad, well developed marketplace, permitting market participants to charge prices that reflect their costs and risks. For all those reasons, PLIS was well positioned to prevent the injury B2B suffered from Tricon's inadequate insurance coverage.[4]

---

[4] We confine our analysis to the somewhat particularized facts of this case. Nothing in our opinion suggests that in a more typical case (e.g., an automobile accident) an injured third person has a cause of action against the at-fault party's insurance broker for failing to secure coverage that might compensate the injured party for his damages.

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings.

Cooper, P. J., and Flier, J., concurred.

A petition for a rehearing was denied January 26, 2006, and on January 10, 2006, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied April 19, 2006, S140793. Werdegar, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.