Filed 11/23/15  Lat v. Soriano CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MARTY LAT et al.,<br><br>      Plaintiffs and Appellants,<br><br>      v.<br><br>ARNEL SORIANO,<br><br>      Defendant and Respondent. | B259231<br><br>(Los Angeles County<br>Super. Ct. No. BC528211) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Reversed.

Kantor & Kantor, Glenn R. Kantor and Alan E. Kassan for Plaintiffs and Appellants.

Jampol Zimet, Marc J. Zimet and Landon R. Schwob for Defendant and Respondent.

_____

Marty Lat and Mikel Lat (collectively Plaintiffs or the Lats) contend that the trial court erred by sustaining the demurrer of Arnel Soriano (Soriano) without leave to amend. We agree.

The Lats are the adult sons of Marta Carada (Carada). In 1993, Carada purchased a life insurance policy from Soriano, an insurance agent for defendant Farmers New World Life Insurance Company (Farmers). Among other things, the policy provided that if she became totally disabled and so advised Farmers, the monthly deductions due under the policy could be waived. Plaintiffs were named as the primary beneficiaries under the policy.

In August 2012, Carada was diagnosed with cancer and, as a result, became totally disabled. In July 2013, the policy lapsed due to Carada's failure to pay the policy's premiums. In August 2013, after the policy had lapsed, Carada contacted Soriano to ask if the policy could be reinstated. Soriano advised her that it could not. A month later, in September 2013, Carada died. Plaintiffs subsequently sued Soriano (and Farmers), alleging, inter alia, that Soriano owed Carada (and them) a duty of care, which he negligently breached when he purportedly misinformed Carada in August 2013 that the policy could not be reinstated. The trial court sustained Soriano's demurrer to Plaintiffs' amended complaint without leave to further amend on the ground that Plaintiffs had not alleged facts showing that Soriano owed Carada (and by extension Plaintiffs) a duty of care.

The dismissal was improper. By alleging that Soriano elected to respond substantively to Carada's policy inquiry in August 2013 (instead of merely referring her to either the terms of her policy and/or to her insurer or to a lawyer), Plaintiffs plead sufficient facts that Soriano, by his voluntary actions, created a special duty to or a special relationship with Carada to use reasonable care giving advice to her and for the benefit of her sons. Whether Plaintiffs can prove their case must be resolved at another time and through means other than demurrer.

**BACKGROUND**

## I. The Policy

In December 1993, Farmers issued to Carada a flexible premium universal life policy. The policy's death benefit was $150,000, which was to be paid in the first instance to Plaintiffs. The agent who sold the policy to Carada was Soriano.

The policy provided that "[i]f on any monthly due date, the accumulating account less any policy loan is not enough to cover the monthly deduction for the following month, a grace period of 61 days will be allowed for payment of premium needed to cover the next monthly deduction." Under the terms of the policy, Farmers would provide Carada with notice 31 days before the end of the grace period. The policy further provided that it could be reinstated at any time after Carada stopped paying premiums unless: "1. The policy has been surrendered for its cash value; or [¶] 2. The policy terminates due to the grace period ending."

The policy also contained a "Waiver of Deduction Rider" which provided that if Farmers "receive[d] proof that [Carada] was totally disabled," then Farmers would "waive the monthly deductions due after the start of and during [Carada's] continued total disability." The policy defined total disability as including the inability to work for "a continuous period of at least six months." In order to qualify for the waiver, Carada had to provide notice of her disability to Farmers and continue to pay her monthly deductions "until the claim is approved." The waiver would terminate under a number of circumstances, including when "the policy ends." The waiver did not provide that its invocation would reinstate a lapsed policy.

## II. Carada's Illness and The Policy's Termination

In August 2012, Carada was diagnosed with stage four colon cancer. The illness, in combination with the treatment's side effects, forced Carada to stop working in August 2012. Although she was unable to work, the policy remained in full force and effect through the end of May 2013 due either to continued premium payments by Carada or through the policy's cash value. Because no premium payments were made after May

3

2013 and because the cash value of the policy was no longer sufficient to cover the premium payments after May 2013, the policy's 61-day grace period began on June 1, 2013.

In July 2013, Carada received a notice from Farmers advising her that the policy would lapse if premiums were not paid by the end of that month—that is, by the end of the grace period. "[D]ue to the degeneration of her condition," Carada was not only unable to make the premium payments to keep the policy active, but she "did not have the capacity to understand or initiate the Waiver." In addition, Carada "did not have knowledge of the lapse of her coverage until after its lapse."

In August 2013, after the grace period had ended, Carada contacted Soriano, not Farmers. Carada advised Soriano of her illness and "inquired repeatedly if there was anything which could be done to reinstate" the policy. Soriano repeatedly "advised her that there was nothing that he or she could do to reinstate the policy." In September 2013, Carada died.

## III.    Plaintiffs' Lawsuit

Following Carada's death, Plaintiffs contacted Farmers in order to submit a claim for the policy's death benefits. Farmers advised Plaintiffs that because the policy had lapsed prior to Carada's death, they were ineligible to receive the policy's death benefit. In October 2013, Farmers sent Plaintiffs a letter confirming that they were not entitled to receive the death benefit because the "coverage had lapsed."

In November 2013, Plaintiffs filed suit against Soriano and Farmers. Plaintiffs asserted two contract causes of action against Farmers (breach of contract and breach of the implied covenant of good faith and fair dealing) and one tort cause of action against Soriano (professional negligence). Specifically, Plaintiffs alleged that Soriano had "inaccurately advised [Carada] that there was nothing could be done to reactivate her coverage." Plaintiffs further alleged that Soriano's "negligent failure to fulfill his professional and fiduciary obligations to . . . Carada resulted in [Farmers's] refusal to honor the subject life insurance policy, and resulted in the denial of the Plaintiffs' benefit

4

claim." Farmers answered Plaintiffs' original complaint. Soriano, however, demurred, arguing principally that he did not owe Plaintiffs a duty of care. In April 2014, the trial court sustained Soriano's demurrer with leave to amend.

In May 2014, Plaintiffs file a first amended complaint (FAC), realleging a professional negligence cause of action against Soriano and adding a "tort of another" cause of action against Soriano for recovery of legal fees. As with the original complaint, the FAC alleged that the professional negligence occurred in August 2013, after the policy had lapsed, when Soriano told Carada the policy could not be reinstated and when he failed to advise Carada that her "contribution requirements could have been waived under the policy's Waiver of Deduction Rider." In the FAC, Plaintiffs alleged that Soriano owed a duty of care both to Carada and to them as third party beneficiaries of the policy.

Soriano demurred to the FAC, arguing in the main once again that he did not owe a duty of care to the Plaintiffs as a matter of law. Plaintiffs opposed, arguing that both claims were "pled with sufficient detail and specificity," but also requesting leave to amend if the trial court found otherwise. Plaintiffs, however, did not offer any additional facts in support of their claims or otherwise explain how their claims could be amended so as to withstand a subsequent demurrer. In September 2014, the trial court agreed with Soriano and sustained the demurrer without leave to amend because, "as a matter of law, . . . Soriano did not owe a duty to Plaintiffs." Plaintiffs timely appeal.

## DISCUSSION

### I.      Standard of Review

We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc*. (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and facts of which judicial notice can be taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "If the allegations in the complaint conflict with the exhibits, we

5

rely on and accept as true the contents of the exhibits.  However, in doing so, if the exhibits are ambiguous and can be construed in the manner suggested by plaintiff, then we must accept the construction offered by plaintiff." (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83.)

"It is not the ordinary function of a demurrer to test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct.  A demurrer tests only the legal sufficiency of the pleading." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213.)  Accordingly, in considering the merits of a demurrer, "the facts alleged in the pleading are deemed to be true, however improbable they may be." (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.)

If, as here, the trial court sustained the demurrer without leave to amend, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  (*Ibid*.)

## II.     Plaintiffs Alleged a Cause of Action for Professional Negligence

"A complaint in an action for negligence must allege (1) the defendant's legal duty of care towards the plaintiff, (2) the defendant's breach of that duty, (3) injury to the plaintiff as a proximate result of the breach, and (4) damage to the plaintiff." (*Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954 (*Jones*).)  "A complaint which lacks facts to show that a duty of care was owed is fatally defective." (*Ibid*.)  Whether a duty exists is a question of law; whether a new duty is recognized is a question of public policy.  (*Ibid*.)  Negligence is not a cause of action which must be pleaded with particularity; instead, it may be alleged in "general terms." (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 527.)

### A.      The Limited Duties of an Insurance Intermediary

Under California law, it is well settled that insurance intermediaries owe only a "'limited duty to their clients.'" (*Travelers Property Casualty Co. of America v. Superior*

6

*Court* (2013) 215 Cal.App.4th 561, 578.) This limited duty is centered around the procurement of insurance. (See *Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc*. (2012) 203 Cal.App.4th 1278, 1283 ["Insurance brokers owe a limited duty to their clients, . . . in *procuring* the insurance requested by an insured'"]; *Mark Tanner Construction , Inc. v. HUB Internat. Ins. Services, Inc*. (2014 ) 224 Cal.App.4th 574, 584 ["Generally, an insurance agent is the agent for the insured in procuring a policy of insurance"].) "Ordinarily, an insurance agent assumes only those duties normally found in any agency relationship. This includes the obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured. [Citation.] The mere existence of such a relationship imposes no duty on the agent to advise the insured on specific insurance matters." (*Jones*, *supra*, 189 Cal.App.3d at p. 954.)

Where an insurance intermediary has been negligent in connection with the procurement of an insurance policy, California courts have routinely found a breach of the duty owed to the insured by the intermediary. (See, e.g., *Greenfield v. Insurance Inc*. (1971) 19 Cal.App.3d 803, 807–808, 810–811; *Hydro–Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc*. (2004) 115 Cal.App.4th 1145, 1153; *Nowlon v. Koram Ins. Center, Inc*. (1991) 1 Cal.App.4th 1437, 1447 (*Nowlon*).) Where, however, the alleged breach involves some act or failure to act outside of the procurement process, courts are much more reluctant to find, let alone create, a duty. (See, e.g., *Kotlar v. Hartford Fire Ins. Co*. (2000) 83 Cal.App.4th 1116, 1119–1120.)

### B. Exceptions to the Limited Duty of an Insurance Intermediary

Although the rule of limited duty for insurance intermediaries is well established, there are certain recognized exceptions to the rule. "'The rule changes, however, when—but only when—one of the following three things happens: (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided . . . , (b) there is a request or inquiry by the insured for a particular type or extent of coverage . . . , or (c) the agent assumes an additional duty by either express agreement or by "holding himself out"

7

as having expertise in a given field of insurance being sought by the insured . . . .' [Citation.]  The agent who assumes additional duties, by holding herself out as having expertise in the insurance being sought by the insured, 'may be liable to the insured for losses which resulted as a breach of that special duty.'"  (*Williams v. Hilb, Rogal & Hobbs Ins. Services of California, Inc*. (2009) 177 Cal.App.4th 624, 635–636.)

For example, in *Free v. Republic Ins. Co*. (1992) 8 Cal.App.4th 1726, the court found that a "special duty" may arise if the agent takes affirmative steps to expand his relationship with the insured.  In *Free*, the defendant insurance company issued plaintiff a homeowners policy in 1979.  That year and every succeeding year until 1989, plaintiff contacted his insurance agent and asked whether his coverage limits were adequate to rebuild his home; on each occasion, he was told they were.  When plaintiff's home was completely destroyed by fire in 1989, however, plaintiff discovered that his policy limits were insufficient to replace his home.  (*Id*. at p. 1729.)  He sued his agent for negligence, asserting that the agent had a duty to provide him with accurate information and breached this duty by advising him that his coverage was adequate.  (*Ibid*.)  The court held that the plaintiff's claim stated a cause of action for negligence.  It explained:  "Clearly defendants were not required under the general duty of care they owed plaintiff to advise him regarding the sufficiency of his liability limits or the replacement value of his residence.  [Citation.]  Nonetheless, once they elected to respond to his inquiries, a special duty arose requiring them to use reasonable care."  (*Ibid*.)

However, to survive a demurrer, a plaintiff alleging a special duty outside of the procurement process must do more than merely allege a long-standing relationship.  For example, in *Jones*, *supra*, 189 Cal.App.3d 950, a child sustained serious injuries when she fell into the swimming pool of an apartment building owned by the insureds.  (*Id*. at p. 953.)  The child's parents sued the insureds for negligence, ultimately settling the action for $1.5 million.  The insureds then sued their insurance agent for negligence, asserting that he had held himself out as an insurance expert, had taken care of the insureds' insurance needs for 10 years, during which time the insureds relied on his

8

expertise, and had expressly and impliedly represented that the insureds' insurance protection was adequate. (*Ibid.*) The trial court sustained the agent's demurrer without leave to amend, and the Court of Appeal affirmed, explaining: "The mere allegation in a complaint, as in this case, that an insured has purchased insurance from an insurance agent for several years and followed his advice on certain insurance matters is insufficient to imply the existence of a greater duty. Such reliance is not at all uncommon when an insured has done business with an insurance agency over a period of time." (*Id.* at p. 956.)

C. ***Extension of an Insurance Intermediary's Limited Duty to Third Party Beneficiaries***

In connection with the procurement of insurance, California courts have found that under certain circumstances the limited duty of an intermediary may extend to third party beneficiaries of the policy. For example, in *Nowlon*, *supra*, 1 Cal.App.4th 1437, the insurer agreed to insure the insured against liability to third parties for personal injuries arising out of its business activities. The policy was brokered to the insured by the defendant. The insured was subsequently sued by the plaintiff. During the course of the litigation, the plaintiff discovered that the insurer was not only insolvent but not authorized to transact business in California. (*Id.* at p. 1440.) Upon learning, this, the plaintiff sued the broker, asserting that he was damaged by the broker's failure to place the policy with an insurer admitted to sell insurance in California. (*Ibid.*) The trial court sustained the defendant broker's demurrer. The Court of Appeal reversed, stating: "The broker's negligence here was just as detrimental to the third party as to the insured. We believe that the duty of the broker or insurer, which is incurred in the procurement or issuance of an insurance policy, runs not only to those who contracted for the insurance policy but also 'runs directly to the class of potential victims of the insured.'" (*Id.* at p. 1447.)

Similarly, in *Business to Business Markets, Inc. v. Zurich Specialties London Limited* (2005) 135 Cal.App.4th 165 (*Business to Business*), the plaintiff, Business to

9

Business (B2B) hired Tricon Infotech, a software company in India, to write a computer program for B2B's business. (*Id*. at p. 167.) The contract required Tricon to carry an errors and omissions insurance policy to compensate B2B if Tricon did not deliver usable software. B2B contacted Hoyla, an insurance broker, and informed it of Tricon's insurance needs. B2B told Hoyla that Tricon was based in India. Hoyla contacted Professional Liability Insurance Services, Inc. (PLIS) to place the insurance policy and provided PLIS with the information it had received from B2B. (*Ibid.*) PLIS contacted Zurich Specialties London Limited, which issued an insurance policy to Tricon that contained a coverage exclusion for claims that arose or related to work performed in India. (*Ibid*.) B2B sued Tricon when Tricon failed to deliver usable software. (*Id*. at p. 168.) Zurich Specialties refused to pay for Tricon's defense or to indemnify Tricon against B2B's claim based on the policy exclusion for work done in India. Tricon defaulted in B2B's action, and a judgment of $922,480 was entered against it. (*Ibid.*) Without insurance coverage, B2B's judgment against Tricon was uncollectible, and B2B sued PLIS for negligence in procuring a policy that did not cover work done in India. (*Ibid*.) The trial court sustained PLIS's demurrer without leave to amend on the ground that PLIS had no direct dealings with B2B and did not owe it a duty of care. (*Ibid*.) PLIS appealed, and the Court of Appeal reversed, stating, "Although B2B is, strictly speaking, not quite an intended beneficiary, it comes close enough to being one that imposing duty on PLIS is within the spirit of *Biakanja* [*v. Irving* (1958) 49 Cal.2d 647]. . . . [¶] Imposing a duty of care to third parties who are not clients does not involve a reworking of any accepted legal principles, particularly when, as here, PLIS was a professional entity rendering specialized services." (*Id*. at p. 171.)

### D. *Plaintiffs Allege Facts Sufficient to Show a Special Duty*

When the FAC is read as a whole, when we assume the truth of those facts actually alleged in the FAC and the truth of those facts that can reasonably be inferred from those expressly pleaded, it is clear that Plaintiffs have alleged a special duty or relationship between Soriano and Carada. First, Plaintiffs alleged a long-term

10

relationship between Soriano and Carada, one spanning two decades or more. Second, and more critically, Plaintiffs alleged facts showing that Soriano took affirmative steps to expand his relationship with Carada. Specifically, Soriano, according to the allegations of the FAC, elected not to redirect Carada's inquiry about reinstatement to Farmers or to a lawyer or to anyone else; he further elected not to refrain from answering the inquiry at all. Instead, he voluntarily chose to provide Carada with an interpretation of the policy and an opinion about whether Farmers would reinstate the policy. Having elected to respond in a substantive way to Carada's inquiry, a special duty arose requiring Soriano to use reasonable care in providing his interpretation and opinion. Plaintiffs assert that Soriano failed to use reasonable care because his interpretation and opinion were "wholly inaccurate." Plaintiffs have also alleged that Soriano's breach proximately caused Plaintiffs to suffer damages. As Soriano was well aware, the policy was designed to benefit Plaintiffs, who were listed as the policy's primary beneficiaries. As a result, if, as Plaintiffs' allege, Soriano's counsel was wrong, the harm to Plaintiffs was directly foreseeable. (*Nowlon*, *supra*, 1 Cal.App.4th at p. 1440; *Business to Business*, *supra*, 135 Cal.App.4th at p. 171.) Put differently, by undertaking to offer Carada substantive advice about her policy and its reinstatement, Soriano was obligated to use reasonable care in dispensing that advice both for Carada's benefit and for the benefit of her sons, the Lats.

In sum, Plaintiffs alleged, generally and concisely, a cause of action for professional negligence. Because the law does not require them to do any more than that at this stage of the litigation (Code Civ. Proc., § 425.10), the trial court erred by sustaining Soriano's demurrer.

We have considered Soriano's other arguments. Without passing on their respective merits, we note that they must be resolved on summary judgment or at trial, not on demurrer.

## III. Plaintiffs Allege a Cause of Action for Tort-of-Another

In California, "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person

11

is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620.) Because we conclude that Plaintiffs have alleged facts establishing that Soriano may have owed a special duty to Carada and, by extension, to Plaintiffs, this derivative cause of action survives Soriano's demurrer.

## DISPOSITION

The judgment is reversed. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


MOOR, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.