Filed 7/21/16  Heller v. Networked Ins. Agents CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RICHARD HELLER, as Trustee, etc., et al., <br><br> Cross-complainants and Appellants, <br><br> v. <br><br> NETWORKED INSURANCE AGENTS, INC. <br><br> Cross-defendant and Respondent. | B261013 <br><br> (Los Angeles County <br> Super. Ct. No. BC461995) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Joseph R. Kalin, Judge.  Affirmed

———

Hamrick & Evans, A. Raymond Hamrick III, and Douglas K. Kackey for Cross-complainants and Appellants

Jampol Zimet, Mark J. Zimet, and Landon R. Schwob for Cross-defendant and Respondent.

———

Richard Heller and Joel Heller, as trustees of the Kenneth B. Heller Inter Vivos Trust Agreement, and J.K.R. Limited Partnership (the Hellers) provided information to their insurance broker (DeBeikes) about certain real property. The information included misrepresentations about the use of the property. DeBeikes included that information in the Hellers' applications for insurance and submitted the applications to Networked Insurance Agents (NIA), an authorized agent for Fireman's Fund Insurance Company (FFIC). After a fire at the property, the Hellers made property and liability claims under the policy. FFIC sued the Hellers to rescind the policy based on the misrepresentations and to seek reimbursement of sums it paid under the policy (the FFIC action). FFIC successfully moved for summary adjudication of the rescission cause of action.

In the FFIC action, the Hellers cross-complained against FFIC, DeBeikes, and NIA. Against NIA, the Hellers sought a judicial declaration as to the rights and obligations of the parties. NIA moved for summary judgment, and the court determined that NIA owed no duty to the Hellers. The Hellers appealed. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

NIA is licensed by the State of California as an agent-broker and describes itself as an "insurance aggregator." It provides insurance carriers with access to insurance brokers, and brokers with access to carriers. At the relevant time, NIA was a party to a "Wholesale Agency Agreement" with FFIC, an insurance carrier, by which FFIC appointed NIA as its agent in California. Under the agreement, NIA was authorized to receive applications for FFIC insurance and to "bind insurance and execute and renew policies," subject to limits specified in the FFIC agency agreement.

DeBiekes was an insurance broker. In 2004, DeBeikes and NIA were parties to an "Agreement of Affiliation" (the affiliation agreement) which described NIA as "a duly licensed insurance agency that is authorized to represent certain insurance carriers," and described DeBeikes as "a duly licensed insurance agent or agency that desires to obtain insurance coverages" from insurance carriers for its clients.

Under the affiliation agreement, DeBeikes was permitted to "submit to NIA for placement applications for . . . insurance," and NIA was "willing to review, process,

2

and submit to the carriers . . . applications for such insurance coverages on behalf of [DeBeikes]." DeBeikes had "the responsibility for the choice of coverage with [DeBeikes's] client, and the final review of policies for accuracy." Subject to exceptions not relevant here, "[t]he ownership and control of the expirations of policies written through NIA by [DeBeikes] belong to [DeBeikes]." DeBeikes's relationship with NIA was described in the affiliation agreement as "that of an independent contractor and not that of an employee," and the agreement stated that nothing therein "shall create the relationship of employer and employee." NIA agreed to pay DeBeikes a portion of the commission it earned on insurance it placed for DeBeikes.

DeBeikes was the Hellers' insurance broker in 2009. On July 19, 2009, DeBeikes submitted applications to NIA for liability and property insurance on behalf of the Hellers. In the spaces on the application forms to indicate "Premises Information," "Nature of Business/Description of Operations by Premise(s)," and "Schedule of Hazards," DeBeikes referred to attached schedules. The attached schedules listed numerous properties, including two buildings on a parcel on Whittier Boulevard in Los Angeles (the Whittier property). The schedules described one building (the front building) as:

"3575 WHITTIER BLVD. LOS ANGELES, CA 90023

BANQUET HALL, CLOTHING-NEW";

The second building (the rear building) was described as:

"REAR 3575 WHITTIER BLVD. LOS ANGELES, CA 90023

HALL'S FURNITURE STORAGE."

The Whittier property was not then being used as a banquet hall, a clothing store, or for furniture storage. In fact, since early 2008, the Hellers had been leasing the property to Faustino Gamez and Gamez Auto Center for "[a]uto repair and any other legal uses." Gamez operated an automobile repair shop on the premises in violation of local ordinances and subleased it to others for use as a lock and key shop and a window and door business.

3

After receiving the applications from DeBeikes, NIA made various inquiries to DeBeikes in connection with its "pre-qualification process." It did not, however, ask DeBeikes about the occupancy descriptions on the property schedules. NIA and the Hellers did not communicate directly with each other.

On July 31, 2009, NIA submitted the applications, with the property schedules to FFIC. Later that day, NIA provided DeBeikes with a price quote for coverage with FFIC. On August 4, DeBeikes, on behalf of the Hellers, submitted to NIA an application for umbrella insurance, which included the property schedules that described the Whittier property as a banquet hall, clothing store, and a place for storing furniture. On August 17, NIA resubmitted to FFIC the applications and property schedules without substantive changes.

On September 21, 2009, FFIC issued to the Hellers a policy of insurance providing property and liability coverage for the Whittier property, and a related umbrella policy. NIA is listed as "Producer" on the policy. Although the property schedules that accompanied the Hellers' application listed the Whittier property's front and rear buildings separately, the FFIC policy listed the entire Whittier property as a single insured location.

In October 2009, DeBeikes contacted NIA about the fact that the two buildings had been combined as one location in the policy. NIA responded by sending an email to FFIC requesting that FFIC "separate" the locations for the Whittier property as indicated in the Hellers' application. There is no evidence that FFIC responded to this request, or of any further action or communication by anyone on this issue.

In October 2010, a lawsuit was filed against the Hellers for the wrongful death of one person and personal injuries suffered by a second person caused by a fire in the rear building of the Whittier property in July 2010, during the term of the FFIC policies. The Hellers tendered the defense of the lawsuit to FFIC. FFIC agreed to defend the Hellers in the litigation subject to a reservation of rights, including the right to rescind its policy. It subsequently commenced the FFIC action against the Hellers to rescind the policy

4

based upon the misrepresentations in the insurance applications regarding the use of the Whittier property.

The Hellers filed a cross-complaint in the FFIC action and, later, the operative first amended cross-complaint against FFIC, DeBeikes, and unnamed "Roe" cross-defendants. The first amended cross-complaint alleged two causes of action against FFIC (breach of the covenant of good faith and fair dealing and breach of contract), four causes of action against DeBiekes (professional negligence, breach of fiduciary duty, breach of oral agreement, and breach of the covenant of good faith and fair dealing), and one cause of action against "all Cross-Defendants" for declaratory relief. In the declaratory relief cause of action, the Hellers sought "a declaration of the parties' rights and obligations among and between themselves." In November 2012, the Hellers substituted NIA in place of cross-defendant Roe No. 1.

In June 2013, the court granted FFIC's motion for summary adjudication against the Hellers on its rescission cause of action. As a result of the rescission, the court declared that FFIC did not have a duty to pay the Hellers' property damage claim, or to defend or indemnify the Hellers in the underlying tort litigation.[1]

In November 2013, NIA filed a motion for summary judgment on the Hellers' cross-complaint "as to the one and only cause of action asserted against [NIA]— declaratory relief." The court granted the motion in June 2014. The court explained that NIA "was an agent for FFIC, owing duties only to its principal, FFIC"; it "was neither an agent nor broker for either [the Hellers] or DeBeikes [and] did not owe any duties to [the Hellers] or DeBeikes." The court further found that NIA "never had any direct communications with [the Hellers]," and there were "no facts establishing that [NIA] was a subagent for DeBeikes." After the court entered judgment for NIA, the Hellers appealed.

_____

[1] In a separate appeal, the Hellers have challenged the court's rulings granting FFIC's motion for summary adjudication, as well as the court's grant of summary judgment in favor of FFIC on the Hellers' cross-complaint, and the court's grant of summary judgment on its complaint against the Hellers. We will decide that appeal in a separate opinion.

5

**DISCUSSION**

I.     *Standard of Review*

Summary judgment is proper when all the papers submitted on the motion show there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); Code Civ. Proc., § 437c, subd. (c).)  A defendant moving for summary judgment bears an initial burden of showing that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense to that cause of action.  (*Aguilar*, *supra*, 25 Cal.4th at p. 849.)  If the defendant meets this burden, the plaintiff has the burden to demonstrate one or more triable issues of material fact as to the cause of action or defense.  (*Ibid.*)  " 'The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.'  [Citation.]"  (*Ibid.*)

In reviewing summary judgment, "[w]e review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party."  (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017–1018.)

II.     *Summary Judgment*

In their third cause of action, the Hellers requested a judicial declaration of the rights and obligations between them and NIA.  On appeal, they assert three reasons why NIA owed them a duty:  (1) NIA was acting as their broker in the FFIC insurance transaction; (2) Their broker, DeBeikes, appointed NIA as a subagent; and (3) NIA voluntarily assumed a duty toward the Hellers by responding to an inquiry regarding the Hellers' coverage and undertaking to seek correction.  In particular, the Hellers assert that NIA breached their duty to them by failing to obtain separate coverage for the front and rear buildings on the Whittier property.  If it had, the Hellers contend, FFIC would have been able to rescind coverage for the front building only, not the rear building where the July 2010 fired occurred.  We reject their arguments.

6

The California Legislature has established a distinction between insurance agents and insurance brokers. (*Marsh & McLennan of Cal., Inc. v. City of Los Angeles* (1976) 62 Cal.App.3d 108, 117.) An insurance *agent* is defined as "a person authorized, by and on behalf of an insurer, to transact all classes of insurance other than life, disability, or health insurance, on behalf of an admitted insurance company." (Ins. Code, § 31.)**2** An insurance *broker,* by contrast, is one "who, for compensation and on behalf of another person, transacts insurance other than life, disability, or health with, *but not on behalf of, an insurer*." (§ 33, italics added.) Here, there is no dispute that, with respect to the Hellers' insurance transaction with FFIC, DeBeikes was an insurance broker acting on behalf of the Hellers and NIA was an insurance agent for FFIC within the meaning of these statutes.

These statutory definitions, however, do "not prevent an actual agency relationship, different from that described in the [statutes], from arising from the fact of conducting a transaction. . . . The actual relationship is determined by what the parties do and say, not by the name they are called." (*Maloney v. Rhode Island Ins. Co.* (1953) 115 Cal.App.2d 238, 245; see generally Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) ¶ 2:12, p. 2-9.) An insurance agent within the meaning of section 31 can thus be a "dual agent," acting on behalf of the insurer and the insurance applicant for purposes of the law of agency. (*Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924, 930; see also *Arocho v. California Fair Plan Ins. Co.* (2005) 134 Cal.App.4th 461, 466 [it "is possible for an agent to represent both the insurer and the insured in connection with the same transaction"].) The fact that NIA was an agent for FFIC, therefore, does not preclude the possibility that it was also acting as the Hellers' broker or that it otherwise owed a duty of care to them. (See, e.g., *Loehr v. Great Republic Ins. Co.* (1990) 226 Cal.App.3d 727, 734; *Free v. Republic Ins. Co.* (1992) 8 Cal.App.4th 1726, 1729.)

---

**2** Unless indicated otherwise, statutory references are to the Insurance Code.

7

Ordinarily, the question of agency is one of fact; however, where the evidence is undisputed, the issue becomes one of law. (*Magnecomp Corp. v. Athene Co.* (1989) 209 Cal.App.3d 526, 536.) "The existence and scope of duty are legal questions for the court." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)

NIA was not the Hellers' insurance broker. A principal-broker relationship, as with other agency or employment relationships, is ordinarily created by contract or prior authorization; the principal must "really employ[]" the agent. (Civ. Code, § 2299; see generally 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, § 92, p 139; see also *Naify v. Pacific Indemnity Co.* (1938) 11 Cal.2d 5, 12 ["actual agency must rest on agreement or consent"].)[3] There is no evidence that the Hellers actually employed NIA for any purpose. Indeed, the Hellers had no direct communication with NIA with respect to the FFIC insurance applications and were unaware of NIA until after this litigation was underway. Nor is there any evidence that the Hellers authorized DeBeikes to employ anyone, including NIA, to act on their behalf.

Although DeBeikes had a contract with NIA, that contract—the affiliation agreement—does not support the existence of a broker or agency relationship between the Hellers and NIA. The affiliation agreement recites that NIA "is authorized to represent certain insurance carriers," and DeBeikes "desires to obtain insurance coverages" for its clients. In essence, the agreement allows DeBeikes to submit insurance applications to NIA and NIA agrees that if it places the insurance with a carrier, it will pay a portion of its commission to DeBeikes. NIA has no other substantive obligations under the agreement.[4] Finally, the intent to avoid an agency or subagency

---

[3] An agency can also be created under a theory of ostensible agency or by subsequent ratification. (See 3 Witkin, *supra*, Agency and Employment, §§ 95-96, pp. 142-145.) The Hellers do not rely upon these theories.

[4] The affiliation agreement provides that "NIA shall have no responsibility for selecting coverage, but will use its best efforts to assist [DeBeikes] in any coverage disputes with a Carrier, in the event coverage was left off in error by the Carrier and the intent to provide coverage by the Carrier is clear." The Hellers did not rely on this

relationship is indicated by the provision that DeBeikes is "an independent contractor and not that of [NIA's] employee." There is, in short, nothing in the affiliation agreement to support the Hellers' contentions that NIA was their broker, co-broker, agent, or subagent.

The Hellers' reliance on *Passarello v. Lexington Ins. Co.* (D.Conn. 1990) 740 F.Supp. 933 is misplaced. In that case, the plaintiff asked an insurance broker to procure insurance for his business. The broker then "contacted AHNA, a wholesale broker, which acted as an intermediary broker between [the plaintiff] and Lexington Insurance Company." (*Id.* at p. 934.) Lexington issued a policy that provided less coverage than the plaintiff had sought. After a fire caused damage in excess of the policy limits, the plaintiff sued AHNA, among others. AHNA moved for summary judgment on the ground that it owed no duty to the plaintiff. The court denied the motion because AHNA acted as a subagent of the broker, and was, therefore, also an agent of the plaintiff. (*Id.* at pp. 936-937.) The court explained that the plaintiff "placed an order and [the broker] sought the aid of an agent to perform that task. . . . Both [the broker and AHNA] were agents of the plaintiff, acting as middlemen between him and Lexington." (*Id.* at p. 936.) Here, by contrast, NIA was not a wholesale broker, but an authorized agent for the insurer, FFIC. More importantly, the relationship between the broker (DeBeikes) and the intermediary (NIA) was defined by their affiliation agreement, which prescribes NIA's duties specifically and narrowly, and, as set forth above, does not support the existence of an agency or subagency relationship with the Hellers.

The Hellers point out that NIA is listed as "Producer" on the policy. According to the Hellers' insurance expert, this designation means that "NIA effectively owns the insurance brokerage contract rights, including [the] rights of renewal on behalf of the Hellers with respect to the subject policy," and that "no other insurance broker could approach FFIC purporting to represent the Hellers in connection with the subject policy or in connection with renewals of the subject policy." Even if FFIC (as the issuer of the policy) and NIA (as the "Producer") understood that designation in the same way,

provision in opposition to NIA's motion for summary judgment and do not rely on it on appeal.

9

the Hellers fail to explain how this designation could establish an agency relationship between the Hellers and NIA or impose on NIA a duty of care toward the Hellers. One "cannot become the agent of another merely by representing [it]self as such." (*Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301.)

The Hellers also rely on the fact that NIA received a commission from FFIC and paid a portion of that commission to DeBeikes. This is consistent with the affiliation agreement and reflects nothing more than that NIA received compensation for the services it provided to FFIC (as its agent) and that DeBeikes was compensated for bringing the Hellers' application to NIA. The payments do not support the existence of a principal-broker relationship between the Hellers and NIA.

The Hellers also refer to testimony by NIA employees that NIA sought to obtain the largest coverage for the lowest price and premium discounts for the Hellers. This indicates only that FFIC, acting through its agent, NIA, was seeking to provide its prospective customers with a product (here, insurance) at a price that would induce the customers to purchase the product. FFIC had to compete with other insurers for the Hellers' and DeBeikes's business and had an incentive to make its product more attractive, such as offering broader coverage and lower prices than its competitors. NIA's efforts to obtain the largest coverage and lowest price was thus consistent with its role as FFIC's agent. Its actions do not give rise to a contractual or agency relationship with the Hellers.

In the absence of a contractual or agency relationship with NIA, the law may impose a duty upon one person toward another based "upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society." (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803.) The judicial declaration of a duty in this sense is " ' "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' [Citation.]" (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397.) Relevant considerations of policy were identified in *Biakanja v. Irving* (1958) 49 Cal.2d 647, where our Supreme Court stated: "The determination

10

whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Id.* at p. 650.)

These and other factors were considered in *Business to Business Markets, Inc. v. Zurich Specialties London Limited* (2005) 135 Cal.App.4th 165 (*Business to Business*), upon which the Hellers rely. In that case, Business to Business Markets, known as "B2B," hired a business in India (Tricon) to write a computer program. (*Id.* at p. 167.) B2B required Tricon to carry errors and omissions insurance to compensate B2B if Tricon failed to deliver the software. B2B contacted a retail insurance broker, who contacted Professional Liability Insurance Services, Inc. (PLIS), a surplus lines insurance broker, to place the insurance. PLIS contacted Zurich Specialties London Limited, which issued a policy to Tricon that excluded coverage for claims arising from work performed in India. (*Ibid.*) Tricon failed to deliver the software, B2B sued Tricon, Tricon defaulted, and B2B obtained an uncollectable judgment. (*Id.* at p. 168.) B2B then sued PLIS for procuring a policy that did not cover work in India. PLIS demurred on the ground that it owed no duty to B2B. (*Ibid.*) The trial court sustained the demurrer, and the Court of Appeal reversed.

In applying the *Biakanja* factors, the Court of Appeal found that the transaction was intended to benefit B2B, and that the foreseeability and degree of certainty of harm factors weighed in favor of a duty to B2B. (*Business to Business*, *supra*, 135 Cal.App.4th at p. 169.) The moral blame and policy of preventing future harm also favored the finding of a duty. The court considered these factors in light of the task for which PLIS was engaged and the alleged failure to fulfill that task. The court explained that the insurance broker "told PLIS about Tricon's insurance needs under its contract with B2B, [and] PLIS failed to meet that responsibility when it obtained a policy that excluded any

11

work done in India by Tricon.  Moreover, imposing liability on PLIS has the salutary effect of encouraging PLIS and other insurance brokers to secure insurance policies for their clients that meet their clients' needs." (*Id.* at p. 170.)

Here, by contrast, NIA's alleged breach of duty is its failure to ensure that FFIC insured the front building and rear building of the Whittier property *separately* rather than as a single location.  Separate coverage was important, the Hellers assert, because separation would have permitted FFIC to rescind coverage for the front building only, not the rear building where the fire occurred.  This assumes that the Hellers' misrepresentations regarding the front building—that it was a banquet hall and clothing store—were material to FFIC's underwriting decisions, and that their misrepresentation regarding the rear building—that it was used for furniture storage—was not material. The Hellers are thus arguing, in effect, that NIA should have insisted on obtaining separate coverage for the two buildings so that their falsehoods about the front building would not affect coverage as to the rear building.  In this light, we cannot assign any moral blame to NIA.  Nor do we need to encourage other insurance intermediaries to protect prospective insureds from such risk.  Even if *Business to Business* is otherwise analogous, the moral blame factor distinguishes it from this case.

The evidence NIA provided in support of its motion for summary judgment is sufficient to establish a prima facie case that it owed no duty to the Hellers with respect to its alleged mishandling of the insurance application, and FFIC's evidence in opposition is insufficient to create a triable issue of material fact.  We therefore affirm the trial court's grant of NIA's motion for summary judgment.[5]

---

[5] The court construed the Hellers' first amended cross-complaint as asserting against NIA only the third cause of action for declaratory relief—the only cause of action asserted against "all Cross-Defendants."  The Hellers argue the court should have construed its fourth cause of action, for professional negligence, to have also been alleged against NIA, even though it was expressly asserted against DeBeikes only.  We do not reach this issue because, having concluded that NIA owed no duty to the Hellers, it could not have breached any duty alleged under the fourth cause of action.

12

## DISPOSITION

The judgment is affirmed.  NIA shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


                                                        ROTHSCHILD, P. J.

We concur:


CHANEY, J.


JOHNSON, J.

13